UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE TERRELL, | ) | |
| | ) | No. 14 CV 2304 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) | |
| | ) | September 29, 2015 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Diane Terrell applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") based on her claim that osteoarthritis, obesity, hypertension, and vertigo render her unable to work. After an administrative law judge ("ALJ") denied her applications and the Appeals Council declined her request for review, Terrell filed this suit seeking judicial review. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment.[1] For the following reasons, Terrell's motion is denied, the Commissioner's motion is granted, and the final decision of the Commissioner is affirmed:

---

[1] The court previously instructed Terrell to seek leave of court prior to preparing a reply brief and to explain the need for a reply. (R. 16.) Despite this requirement, on February 9, 2015, Terrell filed her reply brief without leave of court by cloaking the same as a "motion for leave to file reply brief." (R. 22.) Because Terrell did not adhere to this court's order and because the proposed reply largely rehashes arguments already presented in Terrell's motion for summary judgment, the motion for leave to file a reply is denied.

## Procedural History

In August and September 2011, Terrell applied for DIB and SSI, claiming a disability onset date of August 2, 2011. (Administrative Record ("A.R.") 149, 151.) After her claims were denied initially and upon reconsideration, (id. at 79-83, 89-96), Terrell requested and was granted a hearing before an ALJ, (id. at 97, 114). That hearing took place on September 13, 2012. (Id. at 29-74.) On October 22, 2012, the assigned ALJ denied Terrell's applications. (Id. at 6-23.) The Appeals Council declined review, (id. at 1-5), making the ALJ's decision the final decision of the Commissioner of the Social Security Administration, *see Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Terrell then filed this lawsuit seeking judicial review of the Commissioner's decision. *See* 42 U.S.C. § 405(g); (R. 1). The parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Facts

From 2010 through early 2012, Terrell worked as a childcare provider for three children between the ages of five and nine years old. (A.R. 38-40.) During that time Terrell was treated for dizziness, vertigo, arthritic hand pain, and hypertension, (id. at 245, 257, 300), but her primary complaint was pain and swelling in her knees, (see, e.g., id. at 246-247, 255, 265, 306, 312). Terrell continued to take care of the three children after her alleged disability onset date but eventually stopped working in February 2012 because she had difficulty walking the youngest child to school on time. (Id. at 42.) Based on her age, limited education, previous work, and impairments, Terrell argues that she is disabled

under Rule 201.10 of the Medical-Vocational Guidelines. (R. 13, Pl.'s Br. at 1); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201. At her hearing before an ALJ, she submitted both documentary and testimonial evidence in support of her claim.

**A.     Medical Evidence**

The relevant medical record begins in January 2010 when Terrell reported to an emergency room complaining of dizziness and pain in her right hand. (A.R. 297.) She was diagnosed with vertigo and right thumb arthritis and discharged with prescriptions for medication. (Id. at 245.) She returned to the emergency room in August 2011, this time complaining of pain and swelling in both knees. (Id. at 246-47.) A physical examination showed full flexion and extension in her knees, no edema or erythema, and a normal gait, (id. at 273), but an x-ray of her left knee showed signs of "minimal osteoarthritis," (id. at 274). Terrell was discharged with a prescription for pain medication. (Id. at 246.) Two weeks later she went for a follow-up visit with her treating physician, Dr. Crystal Cash at Near South Health Center, who diagnosed her with knee arthritis. (Id. at 255.) Dr. Cash instructed Terrell to, among other things, elevate her legs with ice packs after strenuous activity and take her prescribed pain medications. (Id. at 256.) Terrell went back to the emergency room in September 2011 complaining of left leg pain and swelling and again was prescribed pain medications. (Id. at 247.) During a follow-up visit shortly thereafter, Dr. Cash noted that Terrell's osteoarthritis was worsening and instructed her to perform extremity exercises. (Id. at 266.)

In October 2011, consulting physician Dr. Charles Kenney performed a residual functional capacity ("RFC") assessment of Terrell. (Id. at 280-87.)

Dr. Kenney determined that Terrell can occasionally lift 20 pounds, frequently lift 10 pounds, and both stand and sit for six hours in an eight-hour day. (Id. at 281.) He wrote that although Terrell's joint pain was exacerbated by standing, her gait was normal. (Id.) He indicated that she had some postural limitations because of knee pain, but he found that her impairments warranted no other limitations. (Id. at 282-84.) Dr. Kenney wrote that Terrell reported only being able to walk about half a block before having to rest and that her knees also hurt while sitting. (Id. at 285.) He concluded, however, that although Terrell had medically determinable impairments that could reasonably cause certain symptoms and limitations, her statements were only "partially credible." (Id.)

In February 2012, consulting physician Dr. Reynaldo Gotanco reviewed Dr. Kenney's opinion and agreed with his RFC assessment describing light work, noting that during Terrell's August 2011 emergency room visit she had full knee extension and flexion, no edema or erythema, and a normal gait. (Id. at 288-90.) Regarding Terrell's credibility, Dr. Gotanco opined that the medical record did not include "significant findings associated with the lower extremities" and that despite imaging showing some swelling and effusion in her left knee, Terrell's reported limitations were "only partially credible." (Id. at 290.)

Meanwhile Terrell continued to seek treatment with Dr. Cash and also began seeing Dr. Camille Billingslea, another physician at Near South Health Center. In March 2012, Dr. Cash noted swelling in Terrell's knees and again prescribed over-the-counter pain medications and extremity exercises. (Id. at 309.) In June 2012,

4

Dr. Billingslea wrote that Terrell's osteoarthritis was worsening and prescribed activity, Tylenol, weight loss, water exercise, and knee injections "if all else fails." (Id. at 312.) Dr. Billingslea gave her similar instructions during a subsequent visit in August 2012. (Id. at 320.)

In September 2012, Dr. Cash completed a physical RFC questionnaire in which she noted Terrell's complaints of "moderate knee pain" with increased activity. (Id. 323.) She opined that Terrell is not a malingerer and mentioned x-ray results showing degenerative disease in her left knee, but also described her prognosis as "good." (Id. at 323-24.) According to Dr. Cash, Terrell can only tolerate low stress jobs and her pain occasionally interferes with her attention and concentration, but she "is functional in all other parts of her life." (Id. at 324.) Dr. Cash did not complete portions of the questionnaire addressing Terrell's work limitations, noting instead that Terrell should be evaluated by an occupational medicine specialist. (Id. at 325.)

**B.    Terrell's Hearing Testimony**

At first Terrell testified that she worked as a childcare provider for five hours a day, six days a week, on the same schedule from 2010 until February 2012. (A.R. 38-39.) She later testified that after August 2011, she reduced the number of hours and days she worked until she stopped working altogether in February 2012 because it took too long to make the 10-block walk to get the youngest child to school. (Id. at 42, 51.) When questioned by the ALJ, Terrell said that except when

5

she was preparing food for the children and walking the youngest to and from school, she spent most of her time sitting down. (Id. at 60.)

Regarding her impairments, Terrell testified that she takes pain medication about four days a week when the pain is especially bad and that she experiences swelling in her knees most days. (Id. at 45-46.) She said she elevates her legs every day and spends most of the day sitting or lying down on the couch. (Id. at 47.) She explained that standing and walking make the pain in her knees worse, and that she can only walk about a block before she has to stop and rest. (Id. at 44-45.) In addition to knee pain, Terrell testified that she suffers from vertigo which comes without warning every three to four days and causes her to have to sit until it passes. (Id. at 47-48, 55-56.) She said she also has daily arthritic pain in her hands and neck which makes it difficult for her to pick up and move things. (Id. at 48-49, 57-58.)

As for daily activities, Terrell stated that she lives by herself and is capable of grooming, cleaning, and getting dressed on her own. (Id. at 49.) But when it comes to cooking, grocery shopping, and laundry, she gets help from her daughter or granddaughters. (Id. at 49-50.) She testified that she only leaves the house two or three days a week to attend church or to visit her daughter, and on those days she gets a ride from someone and usually needs to take pain medication because of increased activity. (See id. at 52-53, 62.)

## C. Vocational Expert's Testimony

A vocational expert ("VE") testified at the hearing regarding the nature of Terrell's previous work. In describing the position of "child monitor," the VE stated that the Dictionary of Occupational Titles ("DOT") categorizes the job as being done at a "medium exertional level," but that Terrell actually performed the job "in the light category range." (A.R. 64-66, 72.) The ALJ then posed a series of hypotheticals to the VE regarding whether someone with specific limitations could perform Terrell's past work. First the ALJ described a person of Terrell's age and limited educational background who could perform light work with occasional climbing, kneeling, and crawling, and frequent crouching. (Id. at 65.) The VE testified that such a person would not be able to perform Terrell's past relevant work as described in the DOT, but could perform the job of child monitor as Terrell actually performed it. (Id. at 65-66, 72.) The VE gave the same answer when the ALJ added restrictions against any crawling and kneeling, more than occasional stooping, and more than frequent handling and fingering bilaterally. (Id. at 66.) When the ALJ further restricted the hypothetical person by adding that she would need to elevate her legs above hip level for at least one hour per day, engage in only occasional handling and fingering bilaterally, or take an unscheduled 15-minute break at least once a week, the VE testified that such restrictions would likely eliminate all jobs at either the light or sedentary levels. (Id. at 67.)

**D.	The ALJ's Decision**

On October 22, 2012, the ALJ issued a decision finding that Terrell was not entitled to DIB or SSI. (A.R. 12.) In applying the standard five-step sequence for assessing disability, *see* 20 C.F.R. § 404.1520(a)(4); *Schomas*, 732 F.3d at 706-07, the ALJ found at step one that Terrell had engaged in substantial gainful activity between her alleged disability onset date, August 2, 2011, and February 2012, when she said she stopped working. (Id. at 11.) The ALJ then concluded that because there had not been a continuous 12-month period during which Terrell did not engage in substantial gainful activity, she was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (Id. at 12.) However, he elected to proceed with the remainder of the five-step analysis as an alternative basis for an unfavorable determination. (Id.) Moving on to step two, the ALJ found that Terrell has severe impairments in the form of osteoarthritis of the left knee and obesity. (Id.) At step three, the ALJ found that those impairments are not of listings-level severity. (Id. at 12-13.) Before turning to step four, the ALJ determined that Terrell has the RFC to perform light work except that she can only occasionally stoop and climb, never crawl or kneel, and only frequently handle and finger bilaterally. (Id. at 13-14) At step four, the ALJ concluded that Terrell's RFC would allow her to perform her past relevant work as a child monitor. (Id. at 17.) Accordingly, the ALJ concluded that Terrell was not disabled and did not proceed to step five. (Id. at 18.)

8

## Analysis

Terrell argues that the ALJ made reversible errors in assessing her credibility, determining her RFC, and analyzing steps one and four in the five-step evaluation process. This court reviews the ALJ's decision only to ensure that it is free of legal error and supported by substantial evidence. *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Evidence is substantial if a reasonable person would accept it as sufficient to support the decision." *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). This court's role is not to reweigh the evidence or to substitute its own judgment for the ALJ's, but rather to ensure that the ALJ constructed a logical bridge between the evidence and his conclusions. *See Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

**A.    Step-One Analysis**

The court first addresses the ALJ's conclusion at step one that Terrell is not disabled because at the time of the decision, there had not been a continuous 12-month period during which she did not engage in substantial gainful activity. (A.R. 12.) Terrell argues that the ALJ erred here because a 12-month durational requirement applies to a claimant's impairments, not her ability to engage in substantial gainful activity. *See* 42 U.S.C. §§ 416(i), 423(d). The Commissioner concedes that the ALJ erred on this point, but contends the error was harmless because the ALJ proceeded with the remainder of the five-step analysis. (R. 21, Govt.'s Br. at 4.) The court agrees with the Commissioner. If the ALJ's decision denying benefits rested solely on his erroneous step-one inquiry, no further discussion would be necessary and remand would be appropriate. But because the

9

ALJ continued his analysis and made additional findings as alternate bases for his unfavorable decision, the court looks to those findings to determine whether they are adequately supported. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (reaffirming that harmless error applies to social security cases); *see also Patton v. Colvin*, No. 11 CV 8439, 2013 WL 4024506, at *3 (N.D. Ill. Aug. 7, 2013) (noting harmless error is often applicable in instances when the ALJ makes an alternate finding).

## B. Credibility Determination

The court begins its review of the ALJ's alternate bases for denying benefits with the credibility determination because an error here often requires a remand. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (noting that an "erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding"); *see also Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011) (noting that an inadequate credibility determination is "reason enough" to reverse an ALJ's decision). This court's review is particularly deferential when it comes to the ALJ's credibility assessment, asking whether the determination is "patently wrong," *see Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010), or whether it lacks a sufficient basis, *see Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). A credibility determination is patently wrong where it "lacks any explanation or support," *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008), or where it is marred by "fatal gaps or contradictions," *see Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) (quotation omitted).

Terrell contends that the ALJ erred because he failed to explain why he rejected her testimony about being unable to walk 10 blocks, having to elevate her legs throughout the day, and needing to take more than one additional break each work day. (R. 13, Pl.'s Br. at 11-12.) But contrary to Terrell's assertions, the ALJ provided sufficient support for his unfavorable credibility assessment. The ALJ explained that although Terrell complained of debilitating pain, x-ray results of Terrell's knee only indicated minimal arthritic changes and minimal swelling. (Id. at 16 (citing id. at 274).) He accurately noted that Terrell's treatment was "routine and conservative," primarily consisting of over-the-counter pain medications with no referrals to an orthopedist or other specialist. (Id. at 16.) The ALJ also pointed out that there was no medical opinion in the record indicating that Terrell was unable to work. (Id. at 15.) These are all valid reasons for discounting a claimant's testimony. *See, e.g., Applewhite v. Colvin*, 54 F. Supp. 3d 945, 955 (N.D. Ill. 2014); *see also Olsen v. Colvin*, 551 Fed. App'x. 868, 875 (7th Cir. 2014) (conservative treatment); *Pepper v. Colvin*, 712 F.3d 351, 368-69 (7th Cir. 2013) (discrepancy between claimant's complaints and the medical evidence); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) ("relatively conservative treatment"); *Williams-Overstreet v. Astrue*, 364 Fed. App'x 271, 276 (7th Cir. 2010) ("Even more important, no physician had opined that she was totally disabled or recommended treatment suggesting it."); *Halsell v. Astrue*, 357 Fed. App'x. 717, 723 (7th Cir. 2009) (over-the-counter medication and only minimal arthritis in the knees).

Terrell nevertheless insists that records from her treating physician, Dr. Cash, corroborate her claimed limitations, such as the need to elevate her legs above her hips throughout the day. (R. 13, Pl.'s Br. at 12.) But Dr. Cash only instructed her to elevate her legs "after strenuous activities." (A.R. 256.) As for being unable to walk 10 blocks, Terrell does not cite to evidence beyond her own testimony supporting such a restriction, and the ALJ noted in his step-three analysis that Dr. Cash did not opine about any limitations on walking. (See id. at 13); *see also Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (ALJ's decision should be read as a whole) (citations omitted). Terrell's assertion that she would need additional work breaks every day also falls short. It is unclear whether Terrell claims she would need such breaks because of dizziness, (see A.R. 48), or because of the alleged need to elevate her legs. Either way, her contention lacks support in the record. According to Terrell's own testimony, dizziness only causes her to take 15-minute breaks every three to four days, not every day. (Id.) Furthermore, none of her doctors noted this limitation. Accordingly, the court finds no error in the ALJ's decision to discount Terrell's claimed restrictions.

Lastly, Terrell argues the ALJ improperly referenced her daily activities "as evidence of her alleged ability to perform sustained work activity[.]" (R. 13, Pl.'s Br. at 12.) However, in the two sentences she devotes to this argument, Terrell fails to state with any specificity how the ALJ erred or provide any substantive support for her contention. A generalized assertion of error is not sufficient to challenge an adverse ruling, *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001), and

undeveloped or unsupported contentions are waived, *Schomas*, 732 F.3d at 703. But even taking Terrell's contention at face value, there is no indication that the ALJ relied on her daily activities as evidence that she can perform sustained work activities. The ALJ summarized Terrell's account of her daily activities in his discussion of her testimony, but he did not suggest in the decision that those activities translated into an ability to work full-time. (See A.R. 15.) Regardless, because the ALJ provided enough valid reasons supported by the record for discrediting Terrell's testimony, the court must uphold the ALJ's credibility determination. *See Ronning v. Colvin*, 555 Fed. App'x. 619, 623 (7th Cir. 2014); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

**C.     RFC Assessment**

Terrell also argues that the ALJ did not properly consider medical evidence in formulating her RFC. (R. 13, Pl.'s Br. at 9.) More specifically, Terrell asserts that the ALJ ignored documentation supporting her inability to stand and walk on a sustained basis, which limits her to sedentary work. (Id.) She refers to records reflecting her complaints of pain and swelling, a medical source statement from Dr. Cash, and x-ray results. (Id.) But none of these records actually contradicts the ALJ's RFC determination. Although Terrell complained of knee pain during several doctor visits, her physicians did not find that she was unable to stand or walk for prolonged periods of time. In fact, as the ALJ noted in his decision, Dr. Cash expressly declined to provide any opinions regarding Terrell's ability to walk, sit, or stand. (See A.R. 17, 325-26.) She described Terrell's prognosis as "good" and wrote

13

that Terrell complained of "moderate knee pain" with increased activity. (Id. at 323.) Aside from indicating that Terrell's symptoms would occasionally interfere with her attention and concentration and that she should perform low stress jobs, Dr. Cash noted that Terrell is "functional in all other parts of her life." (Id. at 324.) Accordingly, Dr. Cash's medical source statement does little to further Terrell's arguments.

Terrell nonetheless insists that the ALJ improperly downplayed the weight of Dr. Cash's opinion, presumably in his decision to accord "slight weight" to Dr. Cash's findings that Terrell's pain would occasionally interfere with her attention and concentration and that she could only tolerate a low stress job. (See id.) A treating physician's medical opinion is entitled to controlling weight if it is well supported and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). But an ALJ may discount a treating physician's opinion if it is "inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). Here, the ALJ correctly noted that Dr. Cash's assessments of Terrell's mental limitations appeared to be based on her subjective complaints. (A.R. 17.) Indeed, Terrell cites no treatment notes that support these prescribed limitations. Terrell did not provide any psychiatric or mental health records, and it is unclear from the record how Dr. Cash arrived at her conclusions. Because an ALJ can decide how much weight to afford a treating physician's opinion based on its

14

supportability and consistency with the medical record, the ALJ did not err here in affording only slight weight to that portion of Dr. Cash's medical source statement. *See* 20 C.F.R. § 404.1527(c); *Elder*, 529 F.3d at 415.

The remainder of Terrell's challenges to the ALJ's RFC determination also falls short. Terrell cites to x-ray results in the record as objective evidence supporting her complaints of disabling pain, but those only show minimal osteoarthritis, and a consulting physician who reviewed the results still deemed Terrell fit for light work. (Id. at 274, 290.) Furthermore, contrary to what Terrell argues, the ALJ did not "play doctor" by crediting Dr. Kenney's opinion while at the same time finding that Terrell is more limited than Dr. Kenney stated. (R. 13, Pl.'s Br. at 11.) An ALJ improperly "plays doctor" if he substitutes his own judgment for a physician's opinion and makes an independent medical finding without relying on other medical evidence in the record. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). The ALJ did not do so here. He acknowledged that Dr. Kenney's opinion was consistent with the medical record "as it existed at the time [Dr. Kenney] rendered his opinion," but noted that subsequent records documenting complaints of continued joint pain supported additional limitations on kneeling, crawling, handling, and fingering. (A.R. 17.) Rather than disregarding medical evidence or "acting on a hunch," as Terrell alleges, the ALJ properly considered the record as a whole and determined that additional limitations were warranted. (See id. (citing id. at 306-22); see also id. at 16 (describing additional accommodations for hand and

15

neck pain).) Accordingly, the court finds no basis for remanding the ALJ's RFC assessment.

**D.     The ALJ's Step-Four Determination**

Terrell next contends that the ALJ committed reversible error in concluding that she can return to her past relevant work as a child monitor. (R. 13, Pl.'s Br. at 13-14.) The essence of Terrell's argument is that the ALJ failed to accurately assess her RFC, which led to an erroneous step-four determination. (Id.) However, as already discussed, the RFC assessment was adequately supported and the ALJ was only obligated to include credible limitations supported by medical evidence in the record. *See Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004); *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Even though the VE testified that work was precluded for someone of Terrell's age and background who needed to elevate her legs throughout the day or take unscheduled 15-minute breaks, the ALJ properly determined that those restrictions were not warranted based on the available medical evidence. *See Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002). As a general matter, a claimant will not be found disabled if she has the RFC to perform her past relevant work as she actually performed it. *See* 20 C.F.R. § 404.1520(b)(2); *see also Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004). The VE testified that the DOT categorizes the child monitor job as being done at a "medium exertional level," but the VE also explained that Terrell actually performed her past work in the "light category range." (See A.R. 65-66, 72.) Because the ALJ properly determined that Terrell retains an RFC for light work,

16

and the VE's testimony supports the ALJ's conclusion that Terrell could do her past job as she actually performed it, the court will not disturb the ALJ's step-four finding.

## Conclusion

For the foregoing reasons, Terrell's motion for summary judgment is denied, the Commissioner's is granted, and the Commissioner's decision is affirmed.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**